IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| ABITIBIBOWATER INC., *et al.*, | : | Case No. 09-11296 (KJC) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
| PETER I. SHAH, | : | |
| | : | |
| Appellant, | : | |
| | : | |
| v. | : | Civil Action No. 11-cv-00005-LPS |
| | : | |
| ABITIBIBOWATER INC., *et al.*, | : | |
| | : | |
| Appellees. | : | |

## MEMORANDUM ORDER

At Wilmington this 9th day of April, 2013, having reviewed the motion to dismiss (the "Motion") (D.I. 3) of Abitibibowater Inc. and its affiliated reorganized debtors (collectively, the "Company" or "Appellees") regarding the appeal (the "Appeal") filed by Peter I. Shah, a former shareholder of Abitibibowater Inc. ("Shah" or "Appellant"), and the papers filed in connection therewith;

IT IS ORDERED that Appellees' Motion is GRANTED, for the reasons discussed below:

## I. BACKGROUND[1] AND PARTIES' CONTENTIONS

1. By its Motion, the Company contends that Shah's Appeal (D.I. 1) should be dismissed as equitably moot, or, in the alternative, for failure to prosecute the Appeal as required by Federal Rule of Bankruptcy Procedure 8006. (*See* D.I. 4; D.I. 7)

---

[1]The salient facts set forth in this background section, taken from Appellees' statement of facts (D.I. 4), are not in dispute.

2. The Company points out that the Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (As Amended), dated November 23, 2010 (the "Plan"), was confirmed on November 23, 2010 by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and the order confirming the Plan (the "Confirmation Order") was not stayed. According to Appellees, on December 9, 2010 (the "Effective Date"), the Company consummated the Plan as well as the plan of reorganization that had been approved on September 23, 2010 in the Company's parallel bankruptcy proceedings in Canada (the "CCAA Plan," and, together with the Plan, the "Plans"). Thereafter, the Company emerged from bankruptcy protection. In addition, the Company: closed on approximately $1.5 billion in exit financing arrangements to fund its obligations under the Plans and its post-emergence operations; used $1.2 billion of such exit financing to repay its prepetition secured debt and various administrative and priority claims; engaged in various internal corporate restructuring transactions;[2] issued roughly 97 million shares of new common stock; distributed approximately 74 million shares of its new stock to unsecured creditors in accordance with the Plan; and extinguished the existing equity interests.

3. Appellees submit that these actions – developed in accordance with the Company's unified reorganization strategy for implementation in both the U.S. and Canadian bankruptcy proceedings and in accordance with its approved interdependent Plans – would be virtually impossible to unravel.

4. Appellees also contend that Shah failed to prosecute his Appeal by neglecting to

---

[2]As Appellees summarize, on and prior to the Effective Date such transactions "included the dissolution, merger and consolidation of numerous legal entities and a general streamlining of the Company's corporate structure." (D.I. 4 at 9)

2

timely designate a record or file a statement of issues presented, as required by Federal Rule of Bankruptcy Procedure 8006. (*See* D.I. 4 at 7, 15-16; *see also* D.I. 8)

5.    Appellant asks the Court to deny the Motion. Ultimately, Shah asks the Court to modify the Plan to grant former shareholders five percent of Abitibibowater's new common stock on account of their cancelled equity interests. (*See* D.I 1 at 22; D.I. 6)

## II.    DISCUSSION

6.    "The doctrine of equitable mootness provides that an appeal should be dismissed as moot when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable." *SemCrude, L.P. v. Manchester Securities Corp. ("SemCrude")*, 2012 WL 8597, at *1 (3d Cir. Jan. 3, 2012) (internal quotation marks omitted); *see also In re Continental Airlines ("Continental II")*, 203 F.3d 203, 209 (3d Cir. 2000). The determination of whether an appeal is equitably moot requires a "discretionary balancing of equitable and prudential factors." *In re Continental Airlines ("Continental I")*, 91 F.3d 553, 560 (3d Cir. 1996) (*en banc*). Specifically, the Court of Appeals for the Third Circuit has recognized five factors that courts should consider in evaluating whether an appeal should be dismissed under the doctrine of equitable mootness:

> (1) whether the reorganized plan has been substantially consummated; (2) whether a stay has been obtained; (3) whether the relief requested would affect the rights of parties not before the Court; (4) whether the relief requested would affect the success of the plan; and (5) the public policy of affording finality of bankruptcy judgments.

*Id.*

7.    Applying these factors here, the Court concludes that Shah's appeal is equitably

moot. As an initial matter, the Plan has been substantially consummated. The Bankruptcy Code defines "substantial consummation" as the:

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2). Here, the Confirmation Order provided that the Plan would be substantially consummated on the Effective Date, and, as detailed above, implementation of the interdependent Plans in the U.S. and Canada has involved numerous complex transactions. *See Continental I*, 91 F.3d at 560–61 (stating substantial consummation is "foremost consideration . . . especially . . . where the reorganization involves intricate transactions").

8.   Next, "[b]ecause of the nature of bankruptcy confirmations . . . it is obligatory upon appellant . . . to pursue with diligence all available remedies to obtain a stay of execution." *Nordhoff Invs., Inc. v. Zenith Elecs. Corp.*, 258 F.3d 180, 186-87 (3d Cir. 2001) (internal quotation marks omitted). Here, however, Shah did not obtain a stay of the Confirmation Order. "The existence or absence of a stay is a critical factor in determining whether to dismiss an appeal under the doctrine of equitable mootness." *Kuntz v. Saul, Ewing, Remick & Saul (In re Grand Union Co.)*, 200 B.R. 101, 105 (D. Del. 1996).

9.   Third, the Court is persuaded that Shah's requested relief would impact numerous third parties not before the Court, including the unsecured creditors of Abitibibowater. (*See* D.I. 4; D.I. 7) Equitable mootness "protects the interests of non-adverse third parties who are not before the reviewing court but who have acted in reliance upon the plan as implemented." *Continental I*, 91 F.3d at 562 (internal quotation marks omitted). The Court agrees with

4

Appellees that entertaining Shah's request for common stock could prejudice already impaired, unsecured creditors (who are estimated to recover less than one percent on account of their claims) and could violate the Bankruptcy Code's absolute priority rule.[3]

10. Moreover, dismissal under the equitable mootness doctrine is warranted "if the relief requested . . . would jeopardize the success of the reorganization plan by causing its reversal or unraveling. . . ." *In re Genesis Health Ventures, Inc.*, 204 F. App'x 144, 146 (3d Cir. 2006) (internal quotation marks omitted). "A bankruptcy appeal will jeopardize the success of a reorganization plan if granting the requested relief: (1) effectively impos[es] a different plan of reorganization on the parties . . . or (2) create[s] an unmanageable, uncontrollable situation for the Bankruptcy Court." *In re Spansion Inc.*, 2011 WL 3420441, at *11 (D. Del. Aug. 4, 2011) (internal quotation marks and citations omitted). The Court must consider "whether [the appellant] seek[s] to knock the props out from under the authorization for every transaction that has taken place" pursuant to the confirmed Plan. *Nordhoff*, 258 F.3d at 189 (internal quotation marks omitted).

11. Here, Appellant views his appeal as "an instant motion to modify the Plan" and provide "a *non-material*, five percent (5%) distribution and order the Debtor to modify the Plan to include Holders." (D.I. 1 at 2, 22) (emphasis added) In seeking such a Plan modification, the Appeal raises the issue of whether the Bankruptcy Court's valuation was fair to Appellant. "A challenge to a bankruptcy court's valuation is a challenge to the very centerpiece of the plan." *Spansion*, 2011 WL 3420441, at *7 (internal quotation marks omitted); *see also Nordhoff*, 258

---

[3]*See* 11 U.S.C. § 1129(b) (requiring that creditors be paid in full before distributions may be paid to equity).

5

F.3d at 189 (noting that valuation of debtor was "very centerpiece of the plan"). A modification such as the one requested would hardly be "non-material." To the contrary, altering the Bankruptcy Court's determination on valuation would jeopardize the entire reorganization Plan (and that of the CCAA Plan).

12. Lastly, the public policy affording finality to bankruptcy judgments weighs in favor of dismissing this Appeal. "[T]he importance of allowing approved reorganizations to go forward in reliance on bankruptcy court confirmation orders may be the central animating force behind the equitable mootness doctrine." *Continental I*, 91 F.3d at 565. The Third Circuit has emphasized this point, stressing that the inquiry

> should not be about the reasonableness of the Investors' reliance or the probability of either party succeeding on appeal. Rather, we should ask whether we want to encourage or discourage reliance by investors and others on the finality of bankruptcy confirmation orders. The strong public policy in favor of maximizing debtors' estates and facilitating successful reorganization, reflected in the Code itself, clearly weighs in favor of encouraging such reliance.

*SemCrude, L.P.*, 2012 WL 8597, at *3 (internal quotation marks omitted). Here, particularly given the number of parties involved in the negotiation, approval, and substantial consummation of the Plan (and its interdependent Canadian companion plan), the Court concludes that public policy favors leaving the Plan undisturbed.

## III. CONCLUSION

13. Consistent with the foregoing analysis, the Court concludes that the equitable mootness doctrine applies. Accordingly, Appellees' motion to dismiss (D.I. 3) is GRANTED, and the Appeal is dismissed.[4]

                                                                                           UNITED STATES DISTRICT JUDGE

---

[4]In light of the disposition of the motion to dismiss on grounds of equitable mootness, a ruling with respect to Appellees' alternative request for dismissal based upon a failure to prosecute is unnecessary. Moreover, Appellees' Motion for Order Striking Untimely Designation of Record or Granting Alternative Relief (D.I. 8) is DENIED as moot. The Court denies Appellees' request for costs.